No. 9204.

BONFILS ET AL. *v.* THE PUBLIC UTILITIES COMMISSION ET AL.

1. STATUTE—*Construed.* Sec. 4068 of the Revised Statutes has no application to an action demanding of a common carrier reparation for a wrong done in exacting an excessive charge for service.

2. ——*Statutes of Limitations* are to be so construed as to have a prospective effect only. Sec. 56 (b) of C. 127 of the Laws of 1913 has no application to existing or past transactions.

Sec. 4066 of the Revised Statutes has no application to a proceeding before the Utilities Commission demanding reparation for an excessive charge by a common carrier. The proceeding is not an action within the meaning of the statute.

3. UTILITIES COMMISSION—*Prior Order of Railroad Commission,* is binding upon. Laws 1913 x. 127, Sec. 66 (d).

4. COMMON CARRIER—*Excessive Charge—Reparation.* A railway company exacting an unreasonable charge for its service must make reparation to the extent of the excess.

The fact that the injured party may "pass on" the damage, by charging more for the goods which are the subject of the excessive charge, does not bar the demand for reparation.

5. ——*Tariff on File,* if unreasonable, is no answer to the shipper's demand for reparation.

*Writ of Review on Rehearing.*

Mr. JOHN T. BOTTOM, Mr. CARLE WHITEHEAD, Mr. ALBERT L. VOGL, for petitioners.

Mr. E. E. WHITTED, Mr. N. H. LOOMIS, Mr. C. C. DORSEY, Mr. J. Q. DIER, Mr. T. R. WOODROW, for respondents.

Mr. Justice Teller delivered the opinion of the court.

THE petitioners filed a complaint with the respondents alleging that they had been charged an excessive rate by

the Union Pacific Railroad Company on coal hauled from the Northern Colorado Coal Fields to Denver, and asking that said company be directed to make reparation to petitioners of said overcharges, as provided by sec. 56 (a) of chapter 127, Laws of 1913.

Said railroad company, by leave of the commission, filed an answer setting up the various defenses hereinafter noted, including three pleas of the statute of limitation.

The commission sustained these three pleas, and held that the claims were barred by sec. 4068, R. S. 1908; by sec. 56 (b) of the said act of 1913; and by sec. 4066, R. S. 1908.

It held, further, that the amount of reparation to be granted should be the difference between the rates charged, and the rates which the commission should find to have been reasonable at the time the transportation services were rendered, no proof of actual damage being required; that the orders made by the Railroad Commission, in two cases hereinafter mentioned, do not establish rates which the commission must accept as reasonable rates for the periods covered by said orders; and that each shipment constitutes a separate cause of action, which accrues at the date of the delivery of the shipment.

A rehearing having been denied by the commission, the petitioners have brought the case here for review. The Union Pacific Railroad Company appears here to sustain the commission's order, and will be hereinafter designated as the defendant. Two other railroad companies have filed briefs as *amici curiae.*

A brief statement of facts is necesasry to a proper understanding of the case. From the record it appears that on April 4, 1910, the Railroad Commission, which the Public Utilities Commission succeeded, made an order in what is known as the Consumers League Case, effective, May 10, 1910, fixing freight rates on coal from the field mentioned to Denver. The carriers, including the defendant, took an appeal from the order to the District Court, where the law was held unconstitutional. From that court

it was brought to this court, and the judgment was reversed. The cause having been remanded to the District Court was there twice tried, and the order finally sustained. From that judgment an appeal was taken to this court, on June 27, 1914, and on November 30, 1914, the cause was dismissed on motion of the carriers, the plaintiffs in error.

The order prescribed rates for a period of two years, but under the statute the rates were suspended by the appeal to the District Court.   On March 20, 1913, the Railroad Commission entered an order in the case of *Garwood v. C. & S. Ry. Co.*, effective April 24, 1913, establishing, for the succeeding two years, the rates named in the order of 1910.   An appeal from this order was taken to the District Court, where the order was sustained in an opinion announced November 29, 1915.

It is conceded that demand for reparation dates from January 11, 1916, when an amended claim or complaint was filed; and no claim is made for excessive charges paid prior to May 10, 1910, when the first order became effective.

Petitioners alleged error in the sustaining of the pleas of the statutes of limitation, and in the holding that the commission need not accept as reasonable, for the periods named, the rates fixed by its predecessor in the two orders mentioned; also, in the holding that each shipment constitutes a separate cause of action which accrues at the date of delivery of the shipment.

Taking up the assigned errors in their order, we have to consider first whether or not the claims are barred by any of the statutes pleaded.

It is clear that sec. 4068, R. S. 1908, does not apply, since this is not an action "for any penalty or forfeiture of a penal statute."   By the terms of the statute, under which claim is made, the claimants are to receive reparation, and it is not imposing a penalty for an "offense" when a carrier is required to make reparation for a wrong done, i. e., the exacting of more than a reasonable charge for transporting freight.

In *Meeker v. Lehigh Valley R. R.*, 236 U. S. 412, 59 L. ed. 644, 35 Sup. St. 328, Ann. Cas. 1916B, 691, the court, having under consideration a claim that a suit to recover reparation for unreasonable rates collected was barred by Sec. 1047, Revised Statutes of United States, which limits the bringing of actions for a penalty or forfeiture to a period of five years, said: "The words 'penalty or forfeiture' in this section refer to something imposed in a punitive way for an infraction of a public law, and do not include a liability imposed for the purpose of redressing a private injury, even though the wrongful act be a public offense, and punishable as such. Here the liability sought to be enforced was not punitive, but strictly remedial."

The next statute which was held to be applicable is sec. 56 (b) of the Public Utility Act (Chapter 127, Laws of 1913). That portion of the section which is relied upon reads as follows: "All complaints concerning excessive or discriminatory charges shall be filed with the commission within two years from the time the cause of action accrues, and the petition for the enforcement of the order shall be filed in the court within one year from the date of the order of the commission." Plaintiffs in error contend that to apply that section in this case is to make the statute retrospective in its operation, contrary to the express language of article II, section 11, of our Constitution; and that it must be held to be prospective only in its effect. To support the latter proposition they rely on *Edelstein v. Carlile*, 33 Colo. 54, 78 Pac. 680, in which we considered the effect of the law of 1893. It reads: "No person shall commence an action for the recovery of lands, or make entry thereon, unless within twenty years after the right to bring such action or make such entry first accrued."

It will be observed that the terms are as general, and inclusive, as are those of the law under consideration, The case involved the following facts: The action was begun in 1901 to recover real estate. The defendant pleaded that he and his grantors had been in possession of the

property since January 1, 1881, and that no action had been begun within twenty years, the period of limitation fixed by the statute. The court held the action not barred by said statute. The ruling upon that proposition was the only matter argued or considered in this court. We there said: "We shall therefore assume that the plaintiff's cause of action accrued on January 1st, 1881, and that, if the statute of 1893 herein quoted does not apply, this action is not barred by the statute of limitations; * * * But one question then remains for our determination; that is, whether the statute of 1893 is retrospective, or prospective merely." Again: "Another rule in reference to all statutes is, that they are to be so construed as to have a prospective effect merely, and will not be permitted to affect past transactions unless such intention is clearly and unequivocally expressed. Wood on Limitations, p. 38." The court adds: "The act of 1893 does not purport to affect existing causes of action," and concludes that it did not affect the defendant in error's cause of action.

For defendant in error it is contended that the above cited holding was not necessary; that the decision might rest on the fact that the action was begun within twenty years after the law of 1893 was enacted. That, they say, would give a prospective effect to the law. It is true that the case might have been decided on that ground, if the court had entertained the views of counsel. It would have been necessary only to state that the statutory limitation of twenty years had not elapsed since the passage of the act. The fact that the court did not so dispose of the case, but discussed the effect of the act on *past* transactions, conclusively establishes that it did not accept counsels' view of the law.

Counsel urge further that the court did not say that an action would not be barred after twenty years from the passage of the act. Naturally it did not do so, because the statutory limit *was twenty years after the cause of action accrued.* That twenty years had elapsed, but the action was held not barred.

The position taken by this court in the quotation above made has been recognized in other cases. In *Connell v. Clifford,* 39 Colo. 121, 88 Pac. 850, in an action to recover real estate, the defendant pleaded the statute of 1893, but abandoned it on the trial. In the opinion it is said: "Counsel for appellant concede that the act of 1893 cannot be applied to this case, for the reason that to do so would be giving to such act a retrospective effect, contrary to the inhibition of section 11, article II, Colorado Constitution." The court then refused to apply the English statute of limitations (32 Henry VIII, Chap. 2) which counsel invoked as a part of the common law in force in this state, because it had not been pleaded.

In *Morris v. St. Louis Bank,* 17 Colo. 231, 29 Pac. 802, this court said: "All statutes of limitation must proceed on the idea that a party has full opportunity afforded him to try his rights in the courts. Cooley's Const. Lim. 366; Angell on Limitations, sec. 22." The above citation from Cooley reads: "The statute could not bar an existing right of claimants without affording this opportunity; if it should attempt to do so it would not be a statute of limitation, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action." The section cited from Angell on Limitations reads: "A statute that barred a past right of action without any provision for a period within which an action might be brought, would not only be unreasonable, but obnoxious to the objection that it would impair the rights of private property."

These statements are in accord with that made by the Supreme Court of Michigan in *Ludwig v. Stewart,* 32 Mich. 27, in which it is held that if a statute of limitations is to apply to past transactions it must fix with certainty the time within which the action must be brought; and that in the absence of such provision such cases are governed by the statute in force at the time of the trans-

action.  This is the rule announced in *Robertson v. Wheeler,* 162 Ill. 566, 44 N. E. 870.  In answers the objection made by counsel that if the section under consideration does not apply, old causes of action are left with no applicable statute of limitation.  The necessity of a specific provision to apply to existing causes of action, as above stated, will be apparent on a moment's consideration.  Suppose that when the statute of 1893 went into effect there were causes of action which had accrued nineteen years and nine months before the act took effect; such actions would be barred in three months.  Conceivably some actions might be barred in even a less time.  Those which had existed for more than twenty years would be barred entirely, and parties would thus be denied their day in court.  Such a law would be invalid.  Cooley's Const. Lim. (6th ed.), p. 449.  "Courts have always rigidly applied this rule in construing statutes of limitation, which, if held retroactive, would cut off existing causes of action without giving the party a reasonable time in which to commence suit." *Powers v. City of St. Paul,* 36 Minn. 87, 30 N. W. 433. The fact that this statute was passed after the decision by this court above stated, without any provision for existing causes of action, is conclusive that it was not intended to apply to them.  There are many cases announcing the rule which we laid down in *Edelstein v. Carlile, Supra.*

In *Garfield v. Bemis,* 84 Mass. 445, it is said that it is most firmly established that statutes shall have a prospective effect only, unless it is expressly provided that they apply to that which is already past when they take effect.  To the same effect is *Steckel's Appeal,* 64 Pa. St. 493.

In *Hopkins v. Jones,* 22 Ind. 310, it was held that a law prescribing the notice to be given on foreclosure of mortgages did not apply to existing contracts in the absence of express provision therefor.  The same rule is announced in *Robertson v. Wheeler, supra,* where a law limiting the time for the foreclosure of mortgages was under consideration.  The act provided that "no person shall bring an

action to foreclose, etc.," after a specified time. It was held that the law did not affect mortgages made before the law was passed, but that they were controlled by laws existing when the mortgages were executed.

In *Harrison v. Metz,* 17 Mich. 377, the court construed a statute of limitation which in terms applied to every action. In the opinion, by Judge Cooley, it is said: "It is a sound rule of construction that legislation is to have a prospective operation only, except when the contrary intent is expressly declared, or necessarily implied from the terms employed."

In *Murray v. Gibson,* 15 Howard 421, 14 L. ed. 755, the United States Supreme Court held that a statute limiting the time for actions on judgments did not apply to judgments prior to the passage of said statute.

In *People v. Supervisors,* 43 N. Y. 130, it was held that past transactions are not affected by a statute unless it is expressly so provided. To the same effect is *N. Y. & O. M. R. R. Co. v. Van Horn,* 57 N. Y. 473.

In *Berley v. Rampacher,* 5 Duer. 183, Judge Duer said: "Although the words of the statute are so general and broad, as in their literal extent, to comprehend existing cases, they must yet be construed as applicable only to such as may thereafter arise, unless the intention to embrace all is plainly and unequivocally expressed."

In *Johnson v. Burrell,* 2 Hill 239, Cowen, J., said: "It is a general rule that a statute affecting rights and liabilities should not be so construed as to act upon those already existing. To give it that effect, the statute should, in terms, declare an intention so to act."

In *Seamans v. Carter,* 15 Wis. 548, 82 Am. Dec. 696, the court referring to general language of a statute as capable of including past transactions, said: "Statutes are frequently drawn in such a manner, yet such general language is held to have been used in view of the established rule that statutes are construed as relating to future transactions and not to past."

In *Finney v. Ackerman*, 21 Wis. 271, the court construed a law which provided that the grantee of "any deed" made by the treasurer, etc, "may at any time within three years" begin an action, etc. Held that it applied only to deeds executed after the passage of the act.

In *Means v. Harrison*, 114 Ill. 248, 2 N. E. 64, the court uses language almost identical with that above quoted from the Wisconsin case; adding that if it is doubtful what the law means, it must be held to have a prospective effect merely.

In *McMillan v. McCormick*, 117 Ill. 79, 7 N. E. 132, the court adhered to the rule above stated.

In *Paddleford v. Dunn*, 14 Mo. 517, decided in 1851, the statute of limitations was pleaded and an attempt made to apply it to a cause of action existing before the passage of the law. The court held that it could not be applied to the case in hand "without a violation of that provision of the state constitution which  *  *  *  inhibits the legislature from passing any law retrospective in its operation." The constitutional provision mentioned is identical with that of our constitution. The court points out that if such an act applied to existing transactions, a man's title might be good the day before the passage of the act and worthless immediately thereafter.

In *Nichols v. Briggs*, 18 S. Car. 481, the court said: "It seems that these statutes affecting the remedy only, constitute no exception to the general rule that laws and amendments thereof of the same state operate only upon matters which arise after their passage, unless they otherwise expressly declare. In this country, statutes of limitations are, as a general rule, applied only to a right of action which is to commence *in futuro* and are not retrospective in their operation."

In Wood on Limitations, p. 28, we find the following: "There is another rule that must be borne in mind in reference to all statutes, which is that they are to be construed so as to have a prospective effect merely, and will not be permitted to affect past transactions unless such

intention is clearly and unequivocally expressed; and under this rule a change in the statute of limitations would not affect existing claims unless such is clearly the intention of the legislature."

Many more cases might be cited to the same effect.

Counsel urge that the statute must be held to apply to existing causes of action because it provides that "all complaints," must be made within two years. The language is no more definite than in the cases above cited, in which the law was held not to apply to past transactions. In the case cited from the 57th N. Y., it was said that a statute should not have a retrospective effect "without express words to that effect, either by enumeration of the cases in which the act is to have such retrospective operation, or by words which can have no meaning unless such construction be adopted."

Counsel insist that we may not interpolate into the statute an exception of causes existing when the act was passed. But that is precisely what the authorities say should be done in interpreting such a statute. Counsel have reversed the rule which requires past transactions to be expressly included, and insist that such transactions are within the operation of the law because of the use of general terms in it.

Counsel urge that we should follow the case of *Sohn v. Waterson*, 84 U. S. 596, 21 L. ed. 737; but to do so requires that we overrule *Edelstein v. Carlile, supra*, which, as we have seen, is supported by the great weight of authority. The reasoning in *Sohn v. Waterson* is not at all satisfactory. The court rejects the rule adopted in the Edelstein-Carlile case, because, it is said, "it leaves all actions existing at the passage of the act without any limitation at all (which it is presumed could not have been intended)."

This is an unfounded conclusion as to the effect of the rule, and the presumption stated does not, according to the cases above cited, exist. The law is, as we have seen, that past transactions are left to be governed by the stat-

utes in force when the causes of action arose; and if the statute does not fix a time in which the actions are to become subject to the law, they are not to be affected by it by reason of its general terms.

The opinion recognizes that where no time is fixed for the bringing of actions for causes existing, and the literal interpretation of the statute would bar them, the law would be unconstitutional. Hence, it is said, it will be presumed that such was not the intent of the legislature. This presumption does not go far enough. It should be that no past transactions are affected. The rule is, according to the authorities, that if it be doubtful whether or not the law is intended to apply to past transactions, the doubt should be resolved against their inclusion.

In *United States v. McPhee,* 51 Colo. 425, 118 Pac. 996, we said: "Legislative enactments will not be construed as retrospective in their operation, even when permissible, unless it is clear they were intended to do so. * * * It would be manifestly unjust, even in cases where a legislative body is empowered to enact laws to some extent retrospective in effect, to take away pre-existing rights, even so far as the remedy only is concerned, by judicial construction of a doubtful statute, unless it is clear that such is its purpose."

If, then, a law must otherwise be held unconstitutional, it should be construed as not including any past transactions.

It is to be observed that in the opinion under consideration none of the many cases in the state courts which are of the class in which *Edelstein v. Carlile* falls, is mentioned; nor are any state decisions cited in support of the court's holding.

As it is a question of local law there is no reason why we should follow the federal rule of construction unless it appears to us to be better than our own rule. The Sohn-Waterson case was cited in the Edelstein-Carlile case, as it was also in the case cited from the 117th Illinois; but not followed in either case. It appears to stand alone.

In the absence of anything in the section now under consideration showing an intention to affect claims existing at the time the act was passed, it must be held that such claims are not barred by the act.

Section 4066, R. S. 1908, was held by the commission to apply, if neither of the other statutes mentioned was applicable. That section reads as follows: "All personal actions on any contract not limited by the foregoing sections, or by any other law in this state, shall be brought within three years after the accruing of the cause of action and not afterwards." As this section applies only to actions on contract, and defendant contends that this is an action *ex·delicto,* counsel cannot consistently rely upon it as a bar. Moreover, this proceeding is not an action within the meaning of said section.

In *Foot v. Burr,* 41 Colo. 192, 92 Pac. 236, 13 L. R. A. (N. S.) 1210, where it became necessary to interpret the word "action" in a statute of limitation, we said: "Both by our Code and by the decision of this court, an action is a proceeding before a court of justice in a manner prescribed by the court or the law. *Jones v. Bank of Leadville,* 10 Colo. 479." (17 Pac. 272.)

This is in accordance with the general definition of the word "action," both by law writers and lexicographers, who clearly distinguish between actions and special proceedings.

The commission erred in holding that the claims were barred.

The commission erred, also, in denying that the rates established by the Railroad Commission for the said·two periods must be accepted as the reasonable rates for those terms. The law creating said commission determines the question.

Section 66 (d) of the Public Utilities Act provides that: "All orders, decisions, rules or regulations heretofore made, issued or promulgated by the railroad commission shall continue in force and have the same effect as though they had been lawfully made, issued or promulgated under

the provisions of this act." These orders are findings or decisions of the commission and are clearly within this section, and thus binding upon the successor of the old commission.

By Section 59 (a) of the act, is is provided that: "This act shall not have the effect to release or waive any right of action by * * * any person or corporation for any right, penalty, or forfeiture which may have arisen or accrued, or may hereafter arise or accrue under any law of this state."

It follows that the orders fixing rates were binding upon respondents, and petitioners may use said rates as a basis of their claims.

It is not necessary, as counsel for the railroad company appear to suppose, that the rate should have been at all of said times in effect, as would be the case in order to sustain a prosecution for overcharging, as an offense. The orders determine the *fact*, that certain rates were at certain times the reasonable rates, and on the question of their reasonableness it is immaterial whether or not they were in force.

Inasmuch as we hold that the actions are not barred by the statute, it is unnecessary to consider the commission's ruling that each shipment constitutes a cause of action.

The contention of the defendant railroad company is that actual damage must be shown, and that the commission has no right to consider matters contained in the orders entered in the said two cases.

That petitioners are entitled to reparation, if any, to the extent of the excess paid above the reasonable rate is definitely decided in *Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U. S. 531, 62 L. ed. 451, 38 Sup. Ct. 186, it being there held that the fact that the Lumber Company may pass on the damage by charging more for the lumber, did not prevent the recovery of the overpayment to the carrier.

The court points out the difference between cases like this and cases for damages because of discrimination, the claimants having paid only a reasonable rate, while others have paid less than that rate. The court says: "But here the plaintiffs have paid cash out of pocket that should not have been required of them, and there is no question as to the amount of the proximate loss."

The court likens the question to "the recovery of insurance, as *res inter alios,* with which the defendants were not concerned."

On principle the question is determined by *Rhinehart v. Denver & Rio Grande Railroad Co.,* 61 Colo. 369, 158 Pac. 149, where we held that the defendant could not reduce a claim against it for damages by the fact that the plaintiff had been paid an insurance indemnity on the property destroyed. The facts in this case easily distinguished it from the cases cited by the defendant to the effect that actual damages should be shown. In some of those cases the law gave damages, *eo nomine,* and in others the claim arose because of discriminatory charges.

This conclusion is in accord with the rule which prevails in England. In *Gt. Western Ry. Co. v. Sutton L. R.,* 4 H. L. 226, in an action to recover the amount of certain alleged overcharges, Justice Blackburn said that a shipper having paid a charge larger than was reasonable might recover back the surplus beyond what the carrier was entitled to receive, in an action for money had and received, as being money extorted from him.

It is contended for the carriers that no claim for an overcharge can be maintained because the charges collected were those prescribed by the tariffs on file "which were never at any time changed or required to be changed, and departure from which was expressly prohibited." The defect in this proposition is that the tariffs on file were illegal from the fact that they were unreasonable. While the carrier was prohibited from departure from the filed charges, it was not prohibited from filing a new, reasonable and lawful tariff.

If, by filing an unreasonable tariff, the carrier could successfully assert that its collection did not result in overcharge, all reparation for overcharges would be made impossible.    This defect in the argument has been pointed out in several decisions.

It is understood that the commission's ruling does not indicate a fixed view on the questions decided, but that it was its purpose by an order *pro forma* to secure a ruling by this court on the defenses presented.

So much of the order of the commission as holds the several statutes of limitations applicable; and that the amount of reparation should be the difference between the rates charged and the rates which the commission should find to have been reasonable during the periods in question is set aside; and so much of said order as holds that amount of reparation should be the difference between the rates paid and the reasonable rates for the period is affirmed,—such rates being those fixed by the Railroad Commission in the two orders above mentioned.

*Reversed in Part and Affirmed in Part.*

Decision *en banc.*

Chief Justice Garrigues, Mr. Justice Burke and Mr. Justice Denison dissenting.

Denison, J., dissenting.

I am forced to the conclusion that the opinion and decision reversing the decision of the Utilities Commission are wrong.

As to the retrospective nature of the limitation in the act of 1913, Sec. 56 b:

I agree that the limitation ought not to be given a retrospective effect; but it is sufficient for the defense here if it be prospective only; an effect from its own date is not retrospective but prospective.    To give it effect upon actions accrued before its date does not make it retrospective.    It is retrospective only when the period of limitation is made to include time which elapsed before the en-

actment of the limitation. *Sohn v. Waterson,* 17 Wall.
U. S. 596, 21 L. ed. 737.

A law which relates to or affects things existing before
its passage is not for that reason retrospective; all laws
do that. As well say it is retrospective because it affects
a man born before its passage. If the effect of the law
upon the existing things begins at the date of its passage
and does not infringe a vested right it is a prospective law,
because it has no effect except after its passage.

The limitation in the act of 1913, therefore, should be
regarded as beginning to run from the date that act took
effect, which was July 11, 1913. The proceeding now in
question was begun January 11, 1916; the limitation, there-
fore, would bar any action which accrued before January
11, 1914, unless the statute was tolled.

The case of *Edelstein v. Carlile,* 33 Colo. 54, 78 Pac.
680, is relied on to sustain the proposition that a statute
of limitations is to be regarded as retrospective if it ap-
plies to any cause of action which accrued before its pas-
sage. That case does not so hold. The facts in it called
for no such holding. The twenty year limitation on ac-
tions to recover real estate, passed in 1893, was the act
there under consideration. The defendant had been in
passession of the land there in question for over twenty
years, but twenty years had not elapsed since the act was
passed, and the court very properly held that without re-
trospective action the statute had no force in that case, and
there was nothing to show that a retrospective effect was
intended. The quoted remarks of Mr. Justice Steele at
the end and elsewhere in his opinion, by the familiar rule
of construction of opinions, must be regarded only in the
light of the case before him. The court could not in that
case, *hold* the law as he seems to state it because the facts
called for the application of no such law.

If then, he intended to state the law as is claimed by the
majority, his statement is a *dictum,* and cannot be regarded
as settling the question now before us.

The force given to the decision in *Edelstein v. Carlile* by the majority opinion in the present case would result in the conclusion that the twenty year statute of limitation could never protect an adverse possessor of real estate unless he entered after the statute was enacted.

For example, A. is in possession in 1881. The statute is passed in 1893. The majority opinion holds that the statute does not begin to run in favor of that possession even after its enactment nor even after it takes effect under the constitutional ninety day rule. So even now the twenty year statute could avail A. nothing even though he had been in adverse possession till now.

I cannot assent to such a construction of the opinion in *Edelstein v. Carlile.* I am confident it will greatly surprise the bar, and, if that case had intended to so hold, it should be overruled. It is clear to my mind that Judge Steele's thought was that the statute should not be construed to refer to a past transaction so as to start the statute running before its enactment. That was the only question before him. What he says is this—that if the act had expressly referred to entries on land made before its enactment it would have been a valid act, even though retrospective, if it left, as it did in that case, a reasonable time for a suit to be brought, because it affected the remedy only, and the defense would have been good, although the time between defendant's entry and the date of the act would have been counted, but since it did not expressly so refer it would not be construed to relate back and include time previous to its enactment, because it would then be retroactive, and it ought not to be construed to be so.

In other words, if the act had been construed as plaintiff in error in that case desired, it would have been retrospective and Judge Steele rightly refused so to construe it. His remarks as applied to that case were entirely right and he was right in his conclusion; but no such case is now before us. Here the question is whether the act can begin to run at the date of its passage, on a claim previously accrued, and the principle stated in *Fisher v. Hervey,* 6 Colo. 16, and other decisions of this court applies.

*Sohn v. Waterson, supra,* has been approved by the Supreme Court of the United States in *Union Pacific v. Laramie Stockyards Co.,* 231 U. S. 190, 58 L. ed. 179, 34 Sup. Ct. 101, and in other cases in that court.

The doctrine of the majority opinion leaves all claims accrued after July 11th, 1913, with no limitation at all. It is improbable that the legislature so intended. Why should they wish to limit an action which accrued July 12th and leave one that accrued July 10th unlimited?

The majority opinion takes the ground that the weight of authority is with them. We think that is not correct. The cases are so numerous that it would be impossible within the short time we have to consider the matter to even hastily read them all.

The decisions of the following states are more or less directly favorable to the majority proposition: Illinois, Iowa, Maine, Michigan, Mississippi, South Carolina, Virginia and West Virginia. The United States in *Murray v. Gibson,* 15 How. 421, followed Mississippi, the case coming from that state.

On the other hand we have the states of Alabama, Arkansas, Indiana, Kentucky, Massachusetts, Minnesota, Nevada, New Hampshire, New York, California, Georgia, Idaho, Kansas, Maryland, Missouri, Oklahoma, Pennsylvania, Washington, Wisconsin and the United States Court where it is free from control of state statutes.

New Hampshire was the first state to refer to retrospective laws in its constitution and in the first case considered in this state this court quoted with approval the language of the New Hampshire Supreme Court in *Clark v. Clark,* 10 N. H. 380, 34 Am. Dec. 165, *inter alia* as follows: "The statute of limitations may be changed by an extension of the time, or by an entire repeal, and affect existing causes of action, which by the existing law would soon be barred. In such cases the right of action is perfect, and no right of defense has accrued from the time already elapsed. But if a right has become vested and perfect, a law, which afterward annuls or takes it away, is retrospective." *Denver, &c., Ry. Co. v. Woodward,* 4 Colo. 162, 164, 165.

This is the correct rule. The decisions of this court have been consistent therewith. See *Willoughby v. George,* 5 Colo. 80, 82; *Bond v. Bank,* Id. 83; *Hewitt v. Colo.'Spgs. Co.,* Id. 184; *Webster v. Gaff,* 6 Colo. 475, 478; *Mass., &c., Co. v. Col. Loan & Trust Co.,* 20 Colo. 1, 36 Pac. 793.

But in *Fisher v. Hervey,* 6 Colo. 16, it is distinctly held that the remedial act is not within the prohibition of the constitution, should be liberally construed to the advancement of the remedy and so considered should be made retrospective and its holds accordingly, *wherever the statute does not impair or disturb absolute vested rights.*

Statutes of limitation have always been considered as remedial.

The rule is correctly stated by the Supreme Court of Arkansas. The statute of limitations begins to run as to contracts made before it went into operation on the day on which the statute takes effect. *Baldwin v. Cross,* 5 Ark. 510; *Lee v. Leech,* 9 Ark. 423.

Some states go still farther and apply the statute of limitations to suits pending at the date of the act. *Bishop v. Wild's Admr.,* 1 Har. (Del.) 87.

The cases upon this point from all points of view are collected in 25 Cyc., pp. 994 and 995, where it appears that a great majority of the authorities both counting by states and by number of decisions,—and, so far as we have read, by directness of application,—are against the opinion of the majority.

The majority opinion cites *Finney v. Ackerman,* 21 Wis. 271. We think that case does not touch the present question. The Wisconsin rule is otherwise: *Parker v. Kane,* 4 Wis. 1, 65 Am. Dec. 283, 291.

I am authorized to state that Chief Justice Garrigues and Mr. Justice Burke concur in the views herein expressed.